MICHAEL GLASSER, Plaintiff, *v.* THE CITY OF BUFFALO, CLARA WINKEN et al., Defendants.

(Supreme Court, Erie Equity Term, April, 1921).

Injunctions — when action to enjoin payment of pension dismissed — charter, city of Buffalo, § 264(1)— police.

> A member of the police force of the city of Buffalo was detailed for duty at the car shops of the New York Central Railroad Company during a strike, and availing himself while on duty, of permission granted by his superior officer, to eat at the commissariat or lunch counter provided by the railroad company for its employees, partook of food which produced ptomaine poisoning, from which he died, as found by the trustees of the police pension fund. In an action to enjoin payment of a pension granted to said member's widow, *held*, that he died from the effects of " an injury while in the actual discharge " of his duties as a police officer within the meaning of section 264(1) of the city charter, and the complaint in an action to enjoin payment of the pension will be dismissed, but without costs.

ACTION for an injunction.

Frederick O. Bissell, for plaintiff.

Joseph Roemhild, Jr., for defendant Clara Winken.

W. S. Rann, corporation counsel, for city and others.

WHEELER, J. This is an action to enjoin the defendants as trustees of the police pension fund of the city of Buffalo, from paying from said fund a pension to the defendant Clara R. Winken, the widow of Robert J. Winken, who at the time of his death was a member of the police force of the city. It is claimed the granting and payment of such pension is unauthorized by law. Robert J. Winken had been detailed by his superior officers to do duty during the pendency of a labor strike at the shops of the New York Central Railroad Company. He was on duty thirteen hours — one day he would be at the station house from six to twelve midnight and at the car shops from twelve to seven. The next night he was at the shops from six to twelve midnight, and at the station house from twelve to seven in the morning. The patrolmen stationed at the car shops had no place to get anything to eat except at the commissariat or lunch counter provided by the railroad company for its employees. The matter of meals was the subject of discussion between these patrolmen and their superior officer, and they were told if they could arrange to get something to eat at the railroad commissariat their superior officer had no objection to their so doing. Winken, it seems, availed himself of this permission and one night partook of food there, which produced ptomaine poisoning from which he died. Such was the claim made before the trustees of the pension fund, and there was sufficient evidence before that board to justify them in so finding. The board of trustees of that fund accordingly granted Winken's widow a pension, payable from the fund. It is contended that charter pro-

visions under which they acted gave them no authority to grant this pension.

Whatever authority the board possessed is derived from subdivision 1 of section 264 of the charter. The board is authorized to grant pensions " To the widow of any member of the police force * * * who shall have been killed while in the actual performance of duty, as such member or employee, *or who shall have died from the effects of any injury received, while in the actual discharge of such duty,"* etc.

The question then is, did Winken die *" from the effects of an injury while in the actual discharge "* of his duties as a police officer.

The case presented is a border one. We fully appreciate strong arguments can be presented in support of the positions taken by opposing counsel. It is true the city of Buffalo was not required by law to furnish meals to members of the police force, nevertheless Winken had been detailed for duty at a place, and during hours, away from his home where it was practically impossible for him to obtain food, unless it was procured at the railroad commissariat at the shops where he was stationed. It was necessary for him to eat to properly discharge those duties, and we think it may be fairly said in eating under those circumstances he was in fact in the *" actual discharge "* of his duty as policeman. I do not think it can be contended that the " injury " received in order to justify a pension need be physical violence. That would be too narrow a construction of the language used.

We are cited no case where the precise situation presented in this case has been passed on by the court. It is hardly to be expected one can be found. We know, however, that in construing the employers' compensation laws of the various states the courts have

been disposed to be liberal in their construction of such statutes as to what constitutes "course of employment."

We are of the opinion the trustees of the police pension fund acted within their powers in awarding a pension to Mrs. Winken.

Other questions have been raised and argued by counsel as to the right of the plaintiff to maintain this action. In view, however, of the disposition made it becomes unnecessary now to discuss those questions.

We think the plaintiff's complaint should be dismissed, but without costs.

Ordered accordingly.